Judge Buckner,
delivered the opinion of the court.
In October, 1793, William Eustace, Jr. a citizen of Virginia, to whom a patent, for one thotiyj sand acres of land, in this state, had issued, executed! his obligation to Original Young, binding himself.to; convey to him seven hundred and fifty acres thereof,: by deed, with general warranty. The purchase, however, was made for the joint benefit of himself and Nathaniel Ashby; and they jointly paid the pricé agreed to be given. In January, 1795, although Eu-stace still held the legal title, Young executed deeds of gift to his son John, and his daughters, Sally and Margaret, which purport to convey to each of them, an equal interest in his half of said seven hundred and fifty acres. Sally subsequently interknarried with Robert McKinney; and, in 1797, Margaret intermarried with William Lowry. In June, 1798. Original Young assigned Eustace’s obligation to John Young, Nathaniel Ashby and his two sons-in law, McKinney and Lofy^ ry. In 1800, Lowry sold to one Anderson, his inter^ij in the land; and executed an obligation, binding J^mj self to convey it, so soon as a title could be pro.9.d¡r$$ " *194 from Eustace; which the obligee, in 1801, assigned t©David McKinney.
In 1804, Robert McKinney, Ashby, William Lowry, and John Young, filed their bill in chancery, in the circuit court, setting forth the above facts against 'Eustace, to compel a conveyance of so much of said *]and, as he might be able to convey, and to recover from him damages, for one hundred and three, and three-fourth acres, part of said tract; which they alleged had been taken from them, by a superior conflicting claim. It is alleged, in the bill, that Ashby had already obtained from him a conveyance for three hundred and eleven, and one-fourth acres, being his portion of the tract, to which Eustace’s title was valid.
During the pendency of the suit, Lowry died, and as to him, it abated. By an amendment to the bill, it is alleged that David McKinney had sold his interest to Robert McKinney; so that he Robert was then entitled to the part, formerly claimed by Lowry; and leave was given to make said David a party; but it •-does not appear that he’was brought before the court.
'An order of publication against Eustace, as a non-Tésident, was entered up, with directions that it should btefinserted in one o:f the gazettes of the state, for eight vréeks, successively. In'October, 1805, the bill was taken as confessed against Eustace. The order of publication was not .returned; but the court entered on the record, tha't it was proved to have been duly executed.
'In October, 1807, the circuit court entered a decree, that the balance of Original Young’s moiety of the seven hundred and fifiy acres, after deducting and excluding'the one hundred and three, and three-fourth acres alleged to be lost, should be divided into three tíqual parts, by commissioners appointed for that purpose, .giving to John Young one parcel, and to Robert McKinney the other two; and that the commissioners should convey to them respectively, the parcels which might be allotted, having first reported the division to eburt. As to the one hundred and three, and tbree-foiirth acres, stated to be lost, a jury was directed to fie impanelled, to ascertain its value. The commis- *195 íioaers appointed, made the division as directed,, of which they made íeport to court; which was confirmed, whereupon, they executed deeds of conveyance,. according to the decree.
In 1819, Thomas M. Lowry, an infant and only child-of said William Lowry, and Margaret his wife, applied to the circuit court, in which the abovementioned decree was entered, for leave to file a bill, which he denominates a bill of review; and which he filed, with the intent of procuring the decree to be opened. He exhibits a complete transcript of the record in the case above referred to, and makes it a part of his bill. He alleges, .thatas heir to his mother,who was at that lime dead, he was entitled to the land, or interest of his mother, in that portion of the seven hundred and fifty a-eres, which his grand-father had.attempted to convey to her by deed in 1795.. He insists, that his father bad no right to sell it to any one; and that Robert McKinney’s claim, which he sat up to it, in the above case,, against Eustace, was unfounded; but that he, said-McKinney, had succeeded in procuring the decree-alluded to, which had been executed, and he thereby invested with the legal title. He alleges the fact of the death of his father, previous to the decree, and that neither he, the complainant, nor his mother, was a party to the record of that suit, nor his claim adjudicated upon. He alleges, that Robert McKinney had sold the land so conveyed to,-him, by the commissioners, to Archibald Steele,.who-had;sold it to Henry Judy, who was- then in-possession. He prays that Eustace, Robert McKinney, Steele and Judy, may be made defendants; that the decree, as to the part claimed by him-, may beset aside; that Eustace may be compelled to-convey to him; and that McKinney, Steele and Judy., may be made to answer to him, for the rents and profits of the land, during the periods-for which they, had enjoyed it.
Robert McKinney answered the bill, admitting the execution of the deed of 1795, by Original Young, to John Young, to his (McKinney’s) wife, and to the mother of the complainant; but resisting the claim set up, upon grounds which it is not necessary to notice. Steele did not answer, nor was process served upon him. Judy .filed his answer, admitting that he *196 had purchased a part of the land from said Steele, for a va^ua^^e consideration, and received a conveyance, without any notice of the claim insisted on by the corn-plainant. He states that he had also purchased a small piece out of the land, conveyed by the commissioners, to said Robert McKinney, from him, McKinney, which had in like manner been conveyed to him, fora valuable consideration, without notice; and exhibits the deeds of conveyance, which had been executed to him.
Bv an amended bill, Martin Haggard and Andrew Ramsey are prayed to be made defendants, who were alleged to be in possession of, and.claiming title, toa part of the land in controversy.
Haggard answered, admitting that he claimed a part of the land as charged, which he had also purchased for a valuable consideration, from McKinney, and had received a conveyance for it, without notice, &c.
Ramsey disclaimed title, denying that he was in possession of any part of the land.
In 1822, Thomas M. Lowry, made and published his last will and testament, by which be devised to, Rebecca Green all of his real estate, and during that year, departed this life; which will was duly admitted to record. The suit having abated by his death, R. Green filed her bill of revivor, and it was revived in her name as devisee. Service of process on the bill; was dispensed with, by consent.
In 1824, Robert McKinney having died, th.e suit' was by consent revived against his heirs; and Judy and Haggard again answered, contesting the claim of Rebecca Green and praying that they might be allowed, for improvements, which they al.lege they had made on the land, if the court should decree a,-gainst them.
In March, 1828, the cause was heard, when the circuit court entered a decree, dismissing the bill with costs. To reverse if, Green prosecutes this writ of error; assigning for error, that the bill was improperly dismissed.
We shall not enter into an investigation of the mer- *197 $g of the claim; because, the foregoing succinct history of the case, is sufficient to shew, that the proper parties were not before the court. The original bill of Thomas M. Lowry was filed, on a supposition, the decree in the case of Robert McKinney, &c. vs. Eustace, and the commissioners deed, made in pursuance of it, had divested Eustace of the legal title. If, in that, he was labouring under an erroneous impression, the consequence will be, that the legal title to the land in controversy, still remains with Eustace, unless, from lapse of time, a deed may be presumed; and we are not of opinion, that under all the circurm stances of the case, such presumption can be indulged ; for itis not pretended that the title-of Eustace was divested, in any other way, than by the deed of the commissioners. How long Original Young, who died in 1820, remained in possession of the land;’ and when Robert McKinney took possession, is not shewn. Before, therefore, the claim set up, could be properly adjudicated on, it was indispensably necessary to bring Eustace before the court, by service of process, actual or constructive,
Decree rendered against isnotTbj ac° tual or con-«tractive ser-P™.' to the suit, is as t0 vvhereTrde’r of publication hd3 not been the record “that it was proved dui^cxecuT l ^tarar-ficient evilpU*>" authorize the rendition of «s decree.
In the bill, on which the decree referred to was entered, he was prayed to be made a defendant; but that did not make him so, as has been repeatedly decided. To make a person a party to the record, so that he will be bound by the decree, there must be actual or conslructive service of the process on him, If that be not done, any decree rendered as to him, is not only Voidable, but void. See the case of Green’s heirs, vs. Brechen ridge’s heirs, IY. Mon. 541, and the authorities there cited. Now the order for publication against Eustace, was for eight weeks only, and there is no proof exhibited by the record, that even that was regularly published, except the. entry on the record, at' the time of taking the bill as confessed, and the recital in the decree, which can not be properly relied upon. Considering then, the decree rendered in that ease, as a nullity, although the bill in the present case, can not be regarded as a bill of review, yet it may be considered as an original bill, setting up an equity, to which Thomas M. Lowry, and after his death, his de-visee had a right to demand an answer. It was there-•if re erroneous to dismiss the bill absolutely, except as *198 to Ramsey, thereby precluding the plaintiff in error from asserting her alleged equity, the-investigation of which she lias a right to demand, when the proper parties may be before the court. A’s to Ramsey, the decree must be affirmed with costs.
Bill filed sis a bill of review, considered as an original • bill.
Chinn, for plaintiff; Hanson, for defendants.
The decree, as to the other parties, must be reVersed, and the cause remanded to the circuit court, with, directions to dismiss the bill, without prejudice, unless steps be taken, in convenient time, to be allowed for the purpose, to bring all proper parties, before the’ court.